JAP:JRL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**12 M 667**

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

DAVID AGUILAR-VELEZ,

    Defendant.

- - - - - - - - - - - - - - - - -X

C O M P L A I N T

(21 U.S.C. §§ 846 and 841(b)(1)(B)(ii)(II); 18 U.S.C. §§ 3551 et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

    CHRISTOPHER McKELVY, being duly sworn, deposes and states that he is a Special Agent of the United States Department of Homeland Security, Homeland Security Investigations ("HSI"), duly appointed according to law and acting as such.

    Upon information and belief, on or about and between July 10, 2012 and July 12, 2012, within the Eastern District of New York and elsewhere, the defendant DAVID AGUILAR-VELEZ, together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved 500 grams or more of a substance containing cocaine, a Schedule II controlled substance, contrary to Title 21, United States Code, Section 841(a)(1).

    (Title 21, United States Code, Sections 846 and 841(b)(1)(B)(ii)(II) and Title 18, United States Code, Sections 3551 et seq.)

The source of your deponent's information and belief are as follows:[1]

1. I have been a Special Agent with HSI and its predecessor agency, Immigrations and Customs Enforcement ("ICE") for approximately three and one half years. In this position, I am tasked with investigating narcotics trafficking, among other offenses. During my tenure with HSI and ICE, I have participated in numerous narcotics investigations during the course of which I have (1) conducted surveillance of individuals engaged in drug trafficking; (2) reviewed and analyzed numerous taped conversations; and (3) debriefed cooperating drug traffickers. Through my training, education and experience, I have become familiar with (1) the manner in which narcotics are imported and distributed; (2) the method of payment for such drugs; and (3) the efforts of persons involved in such activity to avoid detection by law enforcement.

2. I am familiar with the facts and circumstances set forth below from information learned through my personal involvement in this investigation, confidential sources and reports made to me by other law enforcement authorities.

3. As part of my investigation, I have debriefed a

---

[1] Because the purpose of this affidavit is to set forth only those facts necessary to establish probable cause, I have not set forth all the facts and circumstances of which I am aware.

confidential source ("CI") who has agreed to work with HSI.[2]

4. The CI advised agents, in sum and substance, that the CI has a source of supply (the "Source") for cocaine in Ecuador. At the direction of agents, in June 2012, the CI ordered three kilograms of cocaine from the Source in Ecuador on consignment, to be shipped to a port in Brooklyn. Before the shipment arrived, an HSI agent received emails (at an address purporting to be that of the CI), which are believed to be from the Source in Ecuador. The emails advised the CI of the date, time, and method of concealment of the drugs, and included photographs of the container, the number on the container, and the narcotics.

5. On June 30, 2012, a container ship by the name of "Duncan Island" arrived at a port in Brooklyn, New York. On that date, agents boarded "Duncan Island" and located container number TRLU1679362, which matched the number in an email sent to the agent's email address. After a Customs and Border Protection ("CBP") canine identified the presence of narcotics in container number TRLU1679362, CBP officers opened the container. Inside the container, agents found three brick-shaped objects with a total gross weight of approximately 3,195.0 grams. One of the brick-shaped objects field-tested positive for cocaine. On June 30, 2012, HSI seized the narcotics.

---

[2] The CI is a paid informant. He/she has participated in prior investigations with law enforcement.

6. In early July 2012, the CI spoke via telephone with the Source in Ecuador. The CI relayed, in substance, to HSI agents, that the Source told the CI that he/she could deliver two kilograms of cocaine to an individual named "David."

7. On or about July 10, 2012, an individual who identified himself as "David" called the CI. The CI advised that he and "David" had arranged to meet on July 12, 2012, in order for the CI to deliver two kilograms of cocaine. The CI advised that he was at home when he received the call from "David" and resides within the Eastern District of New York.

8. On or about the evening of July 12, 2012, the CI received three telephone calls from the same telephone number used by "David" on July 10, 2012. When the CI received these calls, he was in the presence of agents and was within the Eastern District of New York.

9. On July 12, 2012, at approximately 7:40 p.m., the CI met in Manhattan, New York, in the vicinity of 60th Street and Columbus Avenue, with the defendant DAVID AGUILAR-VELEZ. During that meeting, the CI gave to defendant DAVID AGUILAR-VELEZ a bag containing two brick-shaped objects.[3]

10. At approximately 7:45 p.m. on July 12, 2012, HSI agents arrested defendant DAVID AGUILAR-VELEZ. After he was read his <u>Miranda</u> warnings, defendant DAVID AGUILAR-VELEZ admitted, in

---

[3] The brick-shaped objects were made to look like the brick-shaped objects in the container, but did not contain cocaine.

substance, that he knew that what he had received was cocaine, and that he was supposed to deliver the narcotics to an unknown individual after receiving further instructions. The defendant DAVID AGUILAR-VELEZ also stated that he expected to be paid $2,000.

WHEREFORE, your deponent respectfully requests that the defendant DAVID AGUILAR-VELEZ be dealt with according to law.

Dated:      Brooklyn, New York
            July 13, 2012

_____
Christopher McKelvy
Special Agent
U.S. Department of Homeland Security
Homeland Security Investigations

Sworn to before me this
13th day of July, 2012
_____